**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| WILLIAM M. DEMOSS, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 13-CV-0202-JED-PJC |
| | ) |
| TRACY MCCOLLUM, Warden, | ) |
| | ) |
| Respondent. | ) |

**OPINION AND ORDER**

On April 8, 2013, Petitioner William DeMoss, a state prisoner appearing *pro se*, filed a 28 U.S.C. § 2254 petition for a writ of habeas corpus (Doc. 1). On June 4, 2013, Respondent filed a response (Doc. 8) and provided the state court records (Doc. 9) necessary for adjudication of Petitioner's claims. Petitioner filed a reply (Doc. 14). More than 18 months later, on March 5, 2015, Petitioner filed a motion to stay (Doc. 18). Respondent filed a response to the motion to stay (Doc. 19), and Petitioner filed a reply to the response (Doc. 20). For the reasons discussed below, the motion to stay shall be denied.

*PROCEDURAL BACKGROUND*

The record reflects that Petitioner was tried by a jury for three counts of Shooting with Intent to Kill, After Former Conviction of a Felony, in Delaware County District Court, Case No. CF-2009-02 (Doc. 8-3 at 1). The jury convicted Petitioner of two counts of Shooting with Intent to Kill, After Former Conviction of a Felony (Counts I and III), and one count of the lesser included offense of Assault with a Dangerous Weapon by Use of a Firearm (Count II), and recommended a sentence of thirty (30) years imprisonment for each count of Shooting with Intent to Kill and fifteen (15) years imprisonment for Assault with a Dangerous Weapon. *Id*. The trial judge sentenced Petitioner in accordance with the jury's recommendation, and ordered the sentences for Counts I and II to be

served concurrently to each other and consecutively to the sentence in Count III. *Id.* Attorney Carla Stinnett represented Petitioner at trial. *Id.* at 14.

Petitioner, represented by Katrina Conrad-Legler, perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA), raising the following propositions of error:

| | |
|---|---|
| Proposition I: | The evidence was insufficient to convict Appellant of Count II, Assault with a Dangerous Weapon. |
| Proposition II: | The evidence was insufficient to convict Appellant of Counts I and III, Shooting with Intent to Kill. |
| Proposition III: | Instructional error left Appellant's jury without proper guidance on lesser offenses which denied Appellant a fair trial. |
| Proposition IV: | Appellant was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II, Sections 6, 7, and 20 of the Oklahoma Constitution. |
| Proposition V: | Appellant's Fourteenth Amendment due process rights pursuant to the United States Constitution were violated when the jury was erroneously instructed as to the range of punishment for fines in Counts I-III. |
| Proposition VI: | Irrelevant, improper and misleading evidence resulted in inflated and excessive sentences. |
| Proposition VII: | Prosecutorial misconduct deprived Appellant of a fair trial and caused the jury to render excessive sentences. |
| Proposition VIII: | Appellant's sentences are excessive. |
| Proposition IX: | The cumulative effect of all the errors addressed above deprived Appellant of a fair trial. |

(Doc. 8-1; Doc. 8-3 at 2, 14).  Petitioner also filed a motion for new trial and brief in support as part his direct appeal.  (Doc. 8-11).  On August 30, 2011, in Case No. F-2010-466, the OCCA affirmed the judgment and sentence of the district court, but vacated the fines levied in each count (Doc. 8-3 at 14).  The OCCA also denied Petitioner's motion for new trial (*id.* at 11).

Petitioner filed his federal petition for a writ of habeas corpus on April 8, 2013, raising the following grounds of error:

> Ground I:  The evidence was insufficient to convict Mr. Demoss of Count II, Assault with a Dangerous Weapon.
>
> Ground II:  The evidence was insufficient to convict Mr. Demoss of Counts I & III, [Shooting with Intent to Kill].
>
> Ground III:  Instructional error left Appellant's jury without proper guidance on lesser-included offenses which denied Mr. Demoss a fair trial.
>
> Ground IV:  Mr. Demoss was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II § 6, 7 & 20 of the Oklahoma Constitution.
>
> Ground V:  Irrelevant, improper, and misleading evidence resulted in inflated and excessive sentences.
>
> Ground VI:  Mr. Demoss' sentences are excessive.
>
> Ground VII:  The cumulative effect of all the errors addressed above deprived Mr. Demoss of a fair trial.

(Doc. 1 at 4). Petitioner states that he raised each of these grounds in his direct appeal filed with the OCCA. As stated above, Petitioner filed a motion to stay (Doc. 18) after the parties had briefed the issues raised in the petition.

## *FACTUAL BACKGROUND*

On direct appeal, Petitioner argued that trial counsel provided ineffective assistance (Doc. 8-1 at 23-28). As one of his claims of ineffective assistance of counsel, Petitioner complained that counsel failed to file a motion for a new trial after discovering that, during trial, one of his jurors, K.B., had commented on Petitioner's case on Facebook. *Id.* at 26-28. Petitioner averred that his defense counsel was aware of K.B.'s conduct before his sentencing. *Id.* at 26. Petitioner also stated that "[o]n May 14, 2010, defense counsel filed a Notice of Intent/Designation of Record on behalf

of [Petitioner]." *Id*. In the Notice of Intent/Designation of Record, defense counsel included as "[o]ne of her proposed errors [] that [K.B.] had been commenting about the case on her Facebook page during the pendency of the case." *Id.* Even so, Petitioner's defense counsel did not file a motion for a new trial. *Id.*

In the course of his direct appeal, Petitioner also filed a separate motion for a new trial. Doc. 8-11. In support of his new trial motion, Petitioner provided screenshots of K.B.'s "wall" on Facebook,[1] a screenshot of one of the commenter's Facebook profile, and an affidavit from Oklahoma Indigent Defense System investigator Kim Marks related to the Facebook screenshots (*id.* at 12-18, 24-25). That evidence shows that on the first day of Petitioner's trial – March 8, 2010 – K.B. posted on Facebook that she "[w]as selected for a criminal case on jury duty today. I figured my hair style would exempt me, but alas. . . ." *Id.* at 13. Beneath her post, K.B.'s Facebook "friends" posted comments related to jury duty. *Id.*

In support of his motion for a new trial, Petitioner also included portions of the trial transcript from *State v. Keighton Jon Budder*, Delaware County District Court, Case No. CF-2009-269 (*id.* at 19-23). That transcript reflects that Budder's trial took place shortly after Petitioner was convicted but before he was sentenced (*Id.* at 5, 19-23). Judge Haney, the judge who presided over Petitioner's trial, also presided over Budder's trial (Doc. 8-3 at 14; Doc. 8-11 at 19). Judge Haney instructed Budder's jury as follows:

> If any of you have a Facebook, don't post anything on your Facebook about jury, or jury service, or anything else about that situation. And it sounds funny but

---

[1] "A Facebook wall is part of a Facebook user's profile where the user can post status updates and receive messages from friends. . . . Friends can respond to wall posts publicly (wall-to-wall), or privately through a private message." Facebook Wall, https://www.techopedia.com (accessed Dec. 20, 2015).

4

> I just had that arise in my last trial. So I mention it at this point in time. Don't post anything on the computer.

Doc. 8-11 at 20. Several times during Budder's trial, Judge Haney reminded jurors not to post anything on Facebook or on the internet about the trial (*Id.* at 21, 23).

As previously noted, the OCCA denied relief on Petitioner's claim of ineffective assistance of counsel and denied his motion for new trial, finding that Petitioner had failed to demonstrate any prejudice attributable to K.B.'s Facebook posts. Doc. 8-3 at 10. The OCCA characterized the Facebook comments as "the type of flippant comments frequently made and easily ignored." *Id.*

On January 6, 2015 – more than three (3) years after the conclusion of Petitioner's direct appeal – appellate counsel Katrina Conrad-Legler sent Petitioner a letter (Doc. 18 at 9) stating that, in one of her subsequent cases, *State v. Wayne Harley White*, Delaware County District Court, Case No. CF-2012-182, "Judge Haney appeared to mention your case and what happened during your jury deliberations . . . [and] warns the potential jurors that such behavior is harmful and should not be undertaken." *Id.* Conrad-Legler "encourage[d] [Petitioner] to file a successor [application for post-conviction relief] using this information if you have the opportunity." *Id.* Conrad-Legler attached to her letter several pages from the *White* trial transcript (*Id.* at 10-13). During White's trial, Judge Haney stated the following:

> Now, going back to Facebook. Back several years ago, four or five years ago, I had a young lady sitting up there in that first seat in the back row and she had obviously been to a hair dresser and she had a real spiky hairdo. A young lady. She got selected as a juror. She went home that night and got on her Facebook page and said, well, I got selected as a juror even though I thought my hairdo would get me out of it. That in and of itself was innocuous. That wasn't any big deal. The problem was, is her friends started responding back to her on the Facebook about their experiences of being a juror and what they thought about being a juror, and that therein lies the problem.

5

> Now, basically it's just strictly prohibited. Don't put anything on Facebook about this whole deal until you get done. Once this trial is over with, if you want to put whatever your observations are about the trial or your experiences about the trial on Facebook and share it with your friends and neighbors, go ahead, I don't care, but only after this trial is over with, and you're discharged, Please.

*Id.* at 11-12.

Based on the information provided by Conrad-Legler, Petitioner filed the motion to stay (Doc. 18), requesting that this Court stay his habeas proceeding so that he can "return to state court with a post-conviction [application], exhaust his new evidence and timely bring it to this Court." *Id.* at 2.

### *ANALYSIS*

The United States Supreme Court "has long held that a state prisoner's federal habeas petition should be dismissed if the prisoner has not exhausted available state remedies as to any of his federal claims." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991) (citations omitted). The exhaustion requirement is based on the doctrine of comity. *Rose v. Lundy*, 455 U.S. 509, 518-19 (1982). Requiring exhaustion "serves to minimize friction between our federal and state systems of justice by allowing the State an initial opportunity to pass upon and correct alleged violations of prisoners' federal rights." *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (citations omitted) (per curiam).

To exhaust a claim, Petitioner must have "fairly presented" that specific claim to the state's highest court. *See Picard v. Conner*, 404 U.S. 270, 275-76 (1971). A petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). To satisfy the exhaustion requirement, a prisoner must afford the state court the "opportunity to

apply controlling legal principles to the facts bearing upon (his) constitutional claim," *Picard*, 404 U.S. at 277 (internal quotation marks and citation omitted), "which entails presentation both of the facts on which he bases his claim and the constitutional claim itself." *Wilson v. Workman*, 577 F.3d 1284, 1292 (10th Cir. 2009) (citations omitted).

The enactment of the Antiterrorism and Effective Death Penalty Act (AEDPA) in 1996 "dramatically altered the landscape for federal habeas corpus petitions" by preserving the "total exhaustion" requirement of *Lundy*, but at the same time imposing a one-year statute of limitations on the filing of federal petitions. *Rhines v. Weber*, 544 U.S. 269, 274 (2005). "As a result of the interplay between AEDPA's 1-year statute of limitations and *Lundy's* dismissal requirement, petitioners who come to federal court with 'mixed' petitions run the risk of forever losing their opportunity for any federal review of their unexhausted claims." *Id.* at 275.

In *Rhines*, the Supreme Court held that when faced with a "mixed petition" containing both exhausted and unexhausted claims, a district court could issue a stay to afford the petitioner a chance to return to state court to raise the unexhausted claims. A motion to stay should be granted where (1) Petitioner shows "good cause for his failure to exhaust," (2) the "unexhausted claims are potentially meritorious," and (3) "there is no indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.* at 278. "Because granting a stay effectively excuses a petitioner's failure to present his claims first to the state courts, stay and abeyance is only appropriate when the district court determines there was good cause for the petitioner's failure to exhaust his claims first in state court." *Id.* at 277.

Before applying *Rhines*, the Court must determine whether the new evidence is sufficient to constitute a new claim, thereby rendering the petition a mixed petition. *See Kerchee v. Jones*, 428

Fed. App'x 851, 862-63 (10th Cir. 2011) (unpublished)[2] (declining to remand petitioner's case for a determination of whether a stay-and-abeyance procedure was warranted in light of new evidence where the new evidence did not "advance[] a new claim").  The Supreme Court has declined to "decide where to draw the line between new claims and claims adjudicated on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 186 n.10 (2011).  However, in *Fairchild v. Workman*, 579 F.3d 1134 (10th Cir. 2009), a case decided prior to *Pinholster*, the Tenth Circuit found that, while "not every new piece of evidence makes a claim a new one," new evidence not presented to the state courts may be sufficient to convert a claim formerly raised in state court proceedings into a new claim that was not adjudicated on the merits – thus rendering the petition a mixed petition – if the "new evidence so changes the legal landscape that the state court's prior analysis no longer addresses the substance of [Petitioner's] claim." *Id.* at 1148-49 (remanding for district court to determine whether to use stay-and-abeyance procedure).  It is not enough that the new evidence would merely bolster Petitioner's original claim.  *See generally Schad v. Ryan*, 709 F.3d 855, 858 (9th Cir. 2013); *Fairchild*, 579 F.3d at 1148; *Kerchee*, 428 Fed. App'x at 862-63; *Escamilla v. Stephens*, 749 F.3d 380, 395 (5th Cir. 2014) (finding no new claim where the new evidence did not 'fundamentally alter' the petitioner's claim); *Wilson v. Humprehy*, No. 5:10-CV-489(MTT), 2011 WL 3818712 at *3 (M.D. Ga. Aug. 26, 2011) (unpublished) (stating that while newly discovered evidence that could be used to "impeach [Petitioner's attorney's] character for truthfulness . . . . may be important, it does not constitute a new theory of ineffective assistance of counsel.").

---

[2] This and other unpublished opinions are not precedential but are cited for their persuasive value.  *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

While the new evidence Petitioner wishes to present to the state court – namely the transcript from *State v. Wayne Harley White* – might bolster Petitioner's claim, it does not fundamentally alter the nature of the claim in such a way that it constitutes a new unexhausted theory of ineffective assistance of counsel. The transcript presented to the OCCA as part of Petitioner's direct appeal – *State v. Keighton Jon Budder*, Delaware County District Court, Case No. CF-2009-269 – shows that Judge Haney was aware of K.B.'s conduct before Petitioner was sentenced. It also shows that Judge Haney warned jurors in Budder's trial not to post anything on the internet related to jury duty, and it suggests that Judge Haney thought that if jurors did post anything on the internet a situation could arise that might be detrimental to the jurors' ability to perform their duties.

The substance of Judge Haney's comments in *White* does not vary significantly from the substance of his comments in *Budder*. As in *Budder*, Judge Haney's comments in *White* suggest he was aware of K.B.'s Facebook posts during Petitioner's trial and he thought that, if jurors in the *White* trial posted comments on Facebook, there was a risk that they would be inappropriately influenced by other people's replies. Even so, Judge Haney never explicitly stated that K.B. was not impartial or that the replies she received on Facebook had any negative effect on Petitioner's trial.

Because the new evidence Petitioner wishes to present to the state courts is not sufficient to constitute a new claim, that evidence does not transform the petition into a "mixed petition," and stay-and-abeyance procedures would be inappropriate. Petitioner's motion to stay shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that Petitioner's motion to stay (Doc. 18) is **denied**.

**DATED** this 15th day of January, 2016.

JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE