**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **WILLIAM MICHAEL DEMOSS,** | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 13-CV-0202-JED-PJC** |
| | ) | |
| **TRACY MCCOLLUM, Warden,** | ) | |
| | ) | |
| **Respondent.** | ) | |

**OPINION AND ORDER**

Before the Court is the 28 U.S.C. § 2254 petition for a writ of habeas corpus (Doc. 1), filed

by Petitioner William Demoss, a state prisoner appearing *pro se*.  Respondent filed a response (Doc.

8) and provided the state court records (Docs. 9, 26) necessary for adjudication of Petitioner's

claims.  Petitioner filed a reply (Doc. 14).  On January 22, 2016, Petitioner filed a "Motion for Leave

to Supplement Information" (Doc. 22) and a "Motion to Supplement New Evidence" (Doc. 23).

Respondent filed a response (Doc. 24) to Petitioner's motions, and Petitioner filed a reply (Doc. 25).

For the reasons discussed below, Petitioner's motions to supplement are denied, and the petition for

a writ of habeas corpus is denied.

***BACKGROUND***

Petitioner challenges his convictions, entered in Delaware County District Court, Case No.

CF-2009-02.  In that case, a jury convicted Petitioner of two counts of Shooting with Intent to Kill,

After Former Conviction of a Felony, and one count of the lesser included offense of Assault with

a Dangerous Weapon by Use of a Firearm.  The state court record demonstrates the following facts

resulting in the convictions.

On December 19, 2008, two brothers, C.C. (age seventeen) and M.C. (age nine), set out from

their home in rural Delaware County, Oklahoma and walked toward a neighbor's home a few blocks away (Doc. 26-1, Tr. Vol. I at 104-05, 123). As they walked along the gravel road, they passed Petitioner's property (*id.* at 105). The boys' stepfather was Petitioner's cousin (*id.* at 114), and Petitioner's property abutted their family's property (*id.* at 105). There had been some disputes between Petitioner and the boys' family (*see* Doc. 9-5, Tr. Vol. II at 294-95). At one point, Petitioner threatened to shoot the boys' older brother, E.C., if he came onto Petitioner's land again (*see id.* at 262-63, 290-91). Even so, their relationship appeared to have been cordial at times as Petitioner visited their home on Thanksgiving, about three weeks earlier, without incident (*id.* at 295-96).

C.C. testified that, as he and M.C. walked past Petitioner's property, C.C. saw Petitioner "just outside of his porch" pointing a rifle at him, and Petitioner shot C.C. in the hand (Doc. 26-1, Tr. Vol. I at 106-07). After he was hit, C.C. pushed his brother behind him and yelled for Petitioner to stop shooting (*id.*). C.C. testified that, after he yelled, Petitioner fired two more times, striking C.C. in the hip (*id.* at 107-08). C.C. yelled for M.C. to run, and both brothers ran to the home of a neighbor (*id.* at 108).

In response to the incident, law enforcement officers converged on Petitioner's property (*id.* at 133-34). After setting up a perimeter, they attempted to convince Petitioner to surrender by addressing him over a loud speaker from one of the patrol cars (*id.* at 134-35). Captain Ronald Teel, from the Delaware County Sheriff's Office, testified at trial that:

> I would always announce that this is the Delaware County Sheriff's office. Some of the announcements and especially in the very beginning I always announce my name also. At the time I was a lieutenant with the sheriff's office. "This is Lieutenant Ron Teel with the Delaware County Sheriff's office. Anybody inside the trailer, you need to identify yourself and come outside and speak with us from the sheriff's office." Was going through that also. Sometimes I would add in there, "You will not be hurt.

2

> We need to talk to you.  We need to find out what happened," and be addressing that over and over.

(*id.* at 137-38).  Captain Teel testified that, while at Petitioner's property, he made the announcement over the loud speaker "in excess of a hundred times"  (*id.* at 139).   After several hours, law enforcement began clearing the buildings on Petitioner's property in an attempt to locate Petitioner (*see id.* at 139-42).  Officers approached a shed on Petitioner's property where they had seen smoke coming from a chimney (*id.* at 143-44).  As officers prepared to cut a lock on the outside of the door and enter the shed, a shot came from inside the shed and struck Officer Rick Pike in the abdomen (Doc. 9-5, Tr. Vol. II at 229-30; 236).

Based on these incidents, Petitioner was tried by a jury on three counts of Shooting with Intent to Kill, After Former Conviction of a Felony, in Delaware County District Court, Case No. CF-2009-02 (Doc. 8-3 at 1).  Petitioner testified in his own defense and explained that he had been drinking that day, and he heard his dogs begin to bark (Doc. 9-5, Tr. Vol. II at 245-46).  Petitioner stated that he could not see what his dogs were barking at because his eye sight was poor and he was not wearing his glasses (*id.* at 247), but he fired his gun into some brush to "run[] off whatever was making [his] dogs bark" (*id.* at 261).  Petitioner testified that he did not know that he was firing at C.C. and M.C. (*id.* at 251), and that he suffered from hearing loss and did not hear C.C. yell for him to stop shooting (*id.* at 247-48, 251).

Petitioner further testified that after shooting into the brush, he went to his shed to continue drinking (*id.* at 252).   Once in his shed, he stated that he fell asleep and never heard the announcements from the Sheriff's Office coming over the loud speaker (*id.* at 252, 255).  Petitioner testified that later he heard men around the shed talking about getting bolt cutters, and he believed

the men were attempting to break in (*id.* at 256).  Petitioner stated that after he picked up his gun it discharged accidentally (*id.* at 258).

At the conclusion of trial, the jury convicted Petitioner of two counts of Shooting with Intent to Kill, After Former Conviction of a Felony (Count I (C.C.) and Count III (Rick Pike)), and one count of the lesser included offense of Assault with a Dangerous Weapon by Use of a Firearm (Count II (M.C.)), and recommended a sentence of thirty (30) years imprisonment for each count of Shooting with Intent to Kill and fifteen (15) years imprisonment for Assault with a Dangerous Weapon (*id.* at 374).   The trial judge sentenced Petitioner in accordance with the jury's recommendation, and ordered the sentences for Counts I and II to be served concurrently to each other and consecutively to the sentence in Count III (Doc. 8-3 at 1).   Attorney Carla Stinnett represented Petitioner at trial *(id.* at 14).

Petitioner, represented by attorney Katrina Conrad-Legler, perfected a direct appeal to the Oklahoma Court of Criminal Appeals (OCCA), raising the following propositions of error:

| | |
|---|---|
| Proposition I: | The evidence was insufficient to convict Mr. Demoss of Count II, Assault with a Dangerous Weapon. |
| Proposition II: | The evidence was insufficient to convict Mr. Demoss of Counts I and III, Shooting with Intent to Kill. |
| Proposition III: | Instructional error left Appellant's jury without proper guidance on lesser offenses which denied Mr. Demoss a fair trial. |
| Proposition IV: | Mr. Demoss was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II, Sections 6, 7, and 20 of the Oklahoma Constitution. |
| Proposition V: | Mr. Demoss' Fourteenth Amendment due process rights pursuant to the United States Constitution were violated when the jury was erroneously instructed as to the range of punishment for fines in Counts I-III. |

> Proposition VI:      Irrelevant, improper and misleading evidence resulted in inflated and excessive sentences.
>
> Proposition VII:     Prosecutorial misconduct deprived Mr. Demoss of a fair trial and caused the jury to render excessive sentences.
>
> Proposition VIII:    Mr. Demoss' sentences are excessive.
>
> Proposition IX:      The cumulative effect of all the errors addressed above deprived Mr. Demoss of a fair trial.

(Doc. 8-1; Doc. 8-3 at 14).  Petitioner also filed a motion for new trial and brief in support as part his direct appeal (Doc. 8-11).  On August 30, 2011, in Case No. F-2010-466, the OCCA affirmed the judgment and sentence of the district court, but vacated the fines levied in each count (Doc. 8-3 at 14).  The OCCA also denied Petitioner's motion for new trial (*id.* at 11).

On February 12, 2012, Petitioner filed an application for post-conviction relief in the state trial court (Doc. 8-4 at 1).  According to the trial court's order denying Petitioner's application for post-conviction relief, Petitioner raised one (1) proposition of error, as follows:

> Proposition 1:       Petitioner was denied effective assistance of counsel, at trial and on appeal in violation of the Sixth Amendment to the United States Constitution because defense counsel failied [sic] to obtain a ballistics expert and appeals counsel failed to raise the claim on direct appeal.

(*Id.*).  The trial court held that Petitioner's claim of ineffective assistance of trial counsel was procedurally barred and denied Petitioner's claim of ineffective assistance of appellate counsel (*id.* at 2-3).  On March 14, 2013, the OCCA affirmed the trial court's denial of post-conviction relief (Doc. 8-5).

Petitioner filed his federal petition for a writ of habeas corpus, raising the following grounds of error:

5

Ground I:      The evidence was insufficient to convict Mr. Demoss of Count II, Assault with a Dangerous Weapon.

Ground II:     The evidence was insufficient to convict Mr. Demoss of Counts I & III, [Shooting with Intent to Kill].

Ground III:    Instructional error left Appellant's jury without proper guidance on lesser-included offenses which denied Mr. Demoss a fair trial.

Ground IV:    Mr. Demoss was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II § 6, 7 & 20 of the Oklahoma Constitution.

Ground V:     Irrelevant, improper, and misleading evidence resulted in inflated and excessive sentences.

Ground VI:    Mr. Demoss' sentences are excessive.

Ground VII:   The cumulative effect of all the errors addressed above deprived Mr. Demoss of a fair trial.

(Doc. 1).  In response to the petition, Respondent argues that Petitioner is not entitled to habeas corpus relief (*see* Doc. 8).  In his reply, Petitioner states that he:

[C]oncedes grounds three, five, six, seven, and objects to grounds one, two, and four as contained in his original application . . . . The following are the remaining valid claims before this Court:

**GROUND I:**
The evidence was insufficient to convict Mr. Demoss of Count II, Assault with a Dangerous Weapon.

**GROUND II:**
The evidence was insufficient to convict Mr. Demoss of Counts I & III, [Shooting with Intent to Kill].

**GROUND IV:**
Mr. Demoss was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II § 6, 7 & 20 of the Oklahoma Constitution.

6

(Doc. 14 at 1).  Therefore, the Court finds that Petitioner has abandoned the claims contained in Grounds III, V, VI, and VII of his federal petition for a writ of habeas corpus.

On March 5, 2015, Petitioner filed a motion to stay so that he could return to state court and exhaust newly discovered evidence that he alleged supported his claim that trial counsel was ineffective for failing to file a motion for a new trial after becoming aware of juror misconduct (Doc. 18).  The Court denied Petitioner's motion (Doc. 21).

On June 1, 2015, Petitioner filed a subsequent application for post-conviction relief in the state trial court (*see* Doc. 24-1).  According to the trial court's "Order Denying Second Application for Post Conviction Relief," Petitioner raised one proposition of error: "'Newly Discovered Evidence' that 'Petitioner was denied his Oklahoma Constitutional right to a fair and impartial jury under Article 2 §§ 19 and 20, and United States Constitution 6th and 14th amemndement [sic] right to a fair and impartial jury and due process and equal protection of the laws'" (*id.* at 4).  The trial court determined "[t]hat the Petitioner is actually raising the same juror misconduct issue that was raised on direct appeal and denied by the OCCA in F-2010-466" and denied Petitioner's application (*id.*).  On December 30, 2015, the OCCA affirmed the trial court's denial of Petitioner's subsequent application for post-conviction relief (Doc. 24-2).

On January 22, 2016, Petitioner filed a "Motion for Leave to Supplement Information" (Doc. 22) and a "Motion to Supplement New Evidence" (Doc. 23), seeking to supplement his claim of ineffective assistance of trial counsel with the new arguments and new evidence previously presented in his motion to stay.  In response to the motions, Respondent argues that, under *Cullen v. Pinholster*, 563 U.S. 170 (2011), the Court cannot consider the new evidence (Doc. 24 at 2).

*ANALYSIS*

**A.      Exhaustion/Evidentiary Hearing**

As a preliminary matter, the Court must determine whether Petitioner meets the exhaustion requirements of 28 U.S.C. § 2254(b), (c).  *See Rose v. Lundy*, 455 U.S. 509, 510 (1982).  Petitioner presented his claims raised in Grounds I, II, and IV, the only remaining claims in this action, to the OCCA on direct appeal.  Therefore, the exhaustion requirement of 28 U.S.C. § 2254(b) is satisfied.

In addition, the Court finds Petitioner is not entitled to an evidentiary hearing.  *See Williams v. Taylor*, 529 U.S. 420 (2000).

**B.      Claims Adjudicated by the OCCA**

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions.  Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  See 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 102-03 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050-51 (10th Cir. 2001).  "Clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions."  *White v. Woodall*, 134 S. Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner.

*See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." *White*, 134 S. Ct. at 1702 (citation omitted). The petitioner "must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* (citation and internal quotation marks omitted); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1787 (2013).

Generally, a federal habeas court has no authority to review a state court's interpretation or application of its own state laws. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) (emphasizing that it is not the province of a federal habeas court to reexamine state court determinations on state law questions). When conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States. *Id.* at 68 (citations omitted).

## 1.    Grounds I and II

In Ground I, Petitioner asserts that "[t]he evidence was insufficient to convict [Petitioner] of Count II, Assault with a Dangerous Weapon" (Doc. 1 at 5). On direct appeal, Petitioner argued that "Oklahoma defines assault as an attempted battery, as well as an intentional placing of another in apprehension of receiving an imminent battery" (Doc. 8-1 at 8 (citation omitted)), and "[u]nder the [Oklahoma Uniform Jury Instruction] OUJI definition of Assault with a Dangerous Weapon, the element of assault has to be interpreted as . . . the intentional placing of another in apprehension of receiving an imminent battery" (*id.*).[1] Petitioner alleges that the State did not present sufficient

---

[1] In his petition for a writ of habeas corpus, Petitioner sets forth the same propositions of error that he set forth in his direct appeal brief to the OCCA, but Petitioner includes no additional facts or arguments in his federal petition (*see* Doc. 1). In his response brief, Respondent states that

evidence that the victim was placed in imminent fear (*id.* at 8-9).  On direct appeal, the OCCA held

that "imminent fear is not an element of the crime" and "any rational trier of fact could have found

the essential elements of the crime of Assault with a Dangerous Weapon beyond a reasonable doubt"

(Doc. 8-3 at 2-3 (citations omitted)).

In Ground II, Petitioner asserts that "[t]he evidence was insufficient to convict [Petitioner]

of Counts I & III, [Shooting with Intent to Kill, After Former Conviction of a Felony]" (Doc. 1 at

5).  On direct appeal, the OCCA held that "[w]hile there was conflict in the testimony, there was

competent evidence to support the jury's findings" (Doc. 8-3 at 3).

In a habeas proceeding, the Court reviews the sufficiency of the evidence "in the light most

favorable to the prosecution" and asks whether "*any* rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319

(1979) (citations omitted).  "This standard of review respects the jury's responsibility to weigh the

evidence and to draw reasonable inferences from the testimony presented at trial." *Dockins v. Hines*,

374 F.3d 935, 939 (10th Cir. 2004) (citation omitted).  The Court "impinges upon 'jury' discretion

only to the extent necessary to guarantee the fundamental protection of due process of law."

*Jackson*, 443 U.S. at 319 (footnote omitted).  The Court must "accept the jury's resolution of the

evidence as long as it is within the bounds of reason." *Grubbs v. Hannigan*, 982 F.2d 1483, 1487

(10th Cir. 1993) (citations omitted).

---

he "is proceeding as though Petitioner is adopting the arguments made on direct appeal" (Doc. 8 at
6 n.1).  Petitioner states in his reply that he is adopting the factual basis presented in his direct appeal
brief only to the extent that it supports his position that the state court's adjudication of his claims
was based on an unreasonable determination of the facts (Doc. 14 at 10; *see* 28 U.S.C. § 2254(d)(2)).
Petitioner does not contest that he is adopting the arguments made in his direct appeal brief.
Therefore, the Court will address Petitioner's propositions of error in light of the arguments made
on direct appeal.

Under Oklahoma law, the elements of Assault with a Dangerous Weapon by Use of a Firearm are (1) an assault; (2) upon another person; (3) by shooting at another with a firearm; (4) without justifiable or excusable cause; (5) with intent to injure any person. *See* Okla. Stat. tit. 21, § 645; OUJI-CR(2d) 4-13. Under Oklahoma law, the elements of Shooting with Intent to Kill are (1) intentional and wrongful; (2) shooting another person with a firearm; (3) with the intent to kill another person. *See* Okla. Stat. tit. 21, § 652(A); OUJI-CR(2d) 4-4.

After reviewing the record, the Court cannot find that the OCCA's determination that the evidence presented at trial was sufficient to convict Petitioner of Counts I, II, and III is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. At trial, C.C. testified that, as he was walking with M.C., Petitioner shot him in the hand (Doc. 26-1, Tr. Vol. I at 106-07). C.C. stated that, after he pushed his brother behind him, he identified himself and yelled for Petitioner "to quit shooting" (*id.*). C.C. then saw Petitioner point a firearm at him and shoot two more times, wounding him again, this time in the hip (*id.* at 107-08, 116). Officer Rick Pike testified that, as he and other officers were attempting to enter the shed where Petitioner was located, a shot came from inside the shed and wounded him in the abdomen (Doc. 9-5, Tr. Vol. II at 229-30; 236). A gun was found in the shed where Petitioner had been the sole occupant (*see* Doc. 26-1, Tr. Vol. I at 190). Based on that evidence, and viewed "in the light most favorable to the prosecution," a rational jury could have found the essential elements of the crimes beyond a reasonable doubt. *Jackson*, 443 U.S. at 319.

Petitioner has failed to demonstrate that the OCCA's adjudication of Petitioner's claims was contrary to, or involved an unreasonable application of, clearly established federal law, as

determined by the Supreme Court.  Therefore, Petitioner is not entitled to habeas corpus relief on the claims raised in Grounds I and II.

### 2.      Ground IV

In Ground IV, Petitioner argues that he "was denied effective assistance of trial counsel in violation of the Sixth Amendment to the United States Constitution and Article II § 6, 7 & 20 of the Oklahoma Constitution" (Doc. 1 at 7).  On direct appeal, Petitioner alleged that he was denied effective assistance of counsel when his trial counsel "fail[ed] to obtain defense experts" during Petitioner's competency hearing, failed to "provide an expert or even documentation" to bolster Petitioner's assertion that he suffered from hearing loss, and "failed to file a Motion for New Trial" after discovering evidence of juror misconduct (Doc. 8-1 at 24-26).

To be entitled to habeas corpus relief on his claim of ineffective assistance of trial counsel, Petitioner must demonstrate that the OCCA's adjudication of his claim was contrary to, or an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).  *See* 28 U.S.C. § 2254(d).  *Strickland* sets out a two-pronged standard for review of ineffective assistance of counsel claims.  A defendant must show that (1) his counsel's performance was deficient and that (2) the deficient performance was prejudicial.  *Strickland*, 466 U.S. at 687.

The first prong may be established by showing that counsel performed below the level expected from a reasonably competent attorney in a criminal case.  *Id.* at 687-88.  There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  *Id.* at 689 (citation omitted).  In making this determination, a court must "judge . . . [a] counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  *Id.* at 690.  Moreover, review of counsel's performance must be highly

deferential.  "[I]t is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689 (citation omitted).

To establish the second prong, a defendant must show that this deficient performance prejudiced the defense, to the extent "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see Sallahdin v. Gibson*, 275 F.3d 1211, 1235 (10th Cir. 2002); *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999); *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011) (stating that a petitioner must show that counsel's errors rendered the results of the trial unreliable).  "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.  Review of a state court's decision on ineffective assistance of counsel claims is "doubly deferential." *Pinholster*, 563 U.S. at 190 (noting that a habeas court must "take a highly deferential look at counsel's performance" under *Strickland* and "through the deferential lens of § 2254(d)" (internal quotation marks omitted)).

After reviewing the record, and for the reasons discussed below, the Court cannot find that the OCCA's determination that Petitioner did not receive ineffective assistance of trial counsel is contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court.

### a.    Failure to obtain experts for competency hearing

On direct appeal, Petitioner argued that his "[t]rial counsel was ineffective in her failure to obtain defense experts for [Petitioner's] case" (Doc. 8-1 at 24).  Petitioner states that his trial

counsel's "only expert witness at the competency proceeding was a forensic psychologist who had found [Petitioner] to be competent for further proceedings.  [Trial counsel's] ensuing direct testimony was like watching a salmon trying to swim upstream, as she tried to challenge his diagnosis" (*id.*).  The OCCA held that:

> A review of the record shows Appellant was evaluated by two psychologists and found competent to stand trial.  Appellant has failed to show that but for counsel's failure to obtain the services of a third psychologist, the jury would have found him not competent to stand trial.  Therefore, Appellant has failed to show he was prejudiced by counsel's conduct.

(Doc. 8-3 at 6).

Petitioner has not shown that the OCCA's determination that trial counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*.  While Petitioner argues that trial counsel's job would have been easier had she called an expert to testify that Petitioner was incompetent to stand trial (Doc. 8-1 at 24), two separate experts had already examined Petitioner and both of them found him to be competent (*see* Doc. 9-3, Tr. Comp. Hr'g Vol. III at 48-59).  Petitioner makes no argument as to why a third expert would have found Petitioner to be incompetent to stand trial, and Petitioner's testimony at his competency hearing and his trial support the conclusion that Petitioner was competent to stand trial (*see* Doc. 9-2, Tr. Comp. Hr'g Vol. II at 9-50; Doc. 9-3, Tr. Comp. Hr'g Vol. III at 2-21; Doc. 9-5, Tr. Vol. II at 243-290).

Petitioner has failed to demonstrate that the OCCA's adjudication of Petitioner's claim was contrary to, or involved an unreasonable application of, *Strickland*.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim.

### b.      Failure to present audiology expert

On direct appeal, Petitioner argued that, even though he testified that he suffered from hearing loss in his right ear, trial counsel should have "provide[d] an expert or even documentation to support this testimony," and that without expert testimony, "defense counsel could not provide [Petitioner's] perspective [on the shooting that] she had promised the jurors" in her opening statement (Doc. 8-1 at 25).  The OCCA held that Petitioner "failed to show that the omission of an audiology expert at trial was not sound trial strategy. . . . Contrary to [Petitioner's] argument, defense counsel lived up to her promise made in opening statement to present [Petitioner's] point of view by presenting [Petitioner's] own testimony.  The opinion of an expert could have been inconsistent with that testimony" (Doc. 8-3 at 7).  The OCCA pointed out that "[i]n fact, the extra-record materials attached to the *Application for Evidentiary Hearing* show that testimony from such an expert would have been inconsistent and contradictory to [Petitioner's] trial testimony" (*id.*), and concluded that Petitioner "has not shown there is a reasonable probability that, but for the omission of the expert, the result of his trial would have been different" (*id.*).

In his habeas reply brief, Petitioner argues that "[i]t was far below any reasonable standard to allow the biological abnormalities of diminished sight and hearing slip through a trial without providing a means to establish these evidentiary facts" and "by doing away with the biological ailments suffered by Petitioner the District Attorney was able to freely (uncontested by trial counsel) make it seem as though the Defendant was merely stating falsehoods" (Doc. 14 at 14-15).

Counsel is presumed to have acted in an "objectively reasonable manner" and in a manner that "might have been part of a sound trial strategy."  *Bullock v. Carver*, 297 F.3d 1036, 1046 (10th Cir. 2002) (emphasis omitted).  Where the facts establish that decisions made by counsel were, in

fact, "strategic choices made after thorough investigation of law and facts relevant to plausible options," those decisions are "virtually unchallengeable." *Strickland*, 466 U.S. at 690.  However, "strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690-91. Once a decision is determined to be strategic, the petitioner may only establish deficient performance if "the choice was so patently unreasonable that no competent attorney would have made it." *Bullock*, 297 F.3d at 1046 (citations and internal quotation marks omitted).  Decisions regarding impeaching witnesses and introducing evidence are "quintessentially" matters of trial strategy and tactics. *Boyle v. McKune*, 544 F.3d 1132, 1139 (10th Cir. 2008); *Boyd*, 179 F.3d at 915; *see Strickland*, 466 U.S. at 699.

Petitioner fails to demonstrate that the OCCA's determination that trial counsel was not ineffective was contrary to, or an unreasonable application of, *Strickland*.  Petitioner has not shown that his trial counsel's decision to elicit testimony from Petitioner and not call an expert was not a sound trial strategy decision made after reasonable and sufficient investigation.  The record reflects that Petitioner's trial counsel was aware that Petitioner suffered from hearing impairment prior to Petitioner's trial (*see* Doc. 9-2, Tr. Comp. Hr'g Vol. II at 20; *see also* Doc. 9-3, Tr. Comp. Hr'g Vol. III at 57), and Petitioner's trial counsel elicited testimony from Petitioner about his hearing loss at trial (Doc. 9-5, Tr. Vol. II at 247-48).  Although the prosecutor stated during his closing argument that Petitioner's hearing was "not as bad as he wants you to think it is," the prosecutor also stated that "I think the evidence shows you from watching [Petitioner] respond to questions asked from here, that his hearing is not perfect"  (*id.* at 330).

Petitioner testified, and defense counsel argued, that Petitioner did not know he was shooting at C.C. and M.C. because of what he could not hear – C.C. yelling for him to stop shooting – and that Petitioner did not immediately surrender to law enforcement because he could not hear them announcing their presence (*see id.* at 251, 350).  Even so, Petitioner also testified, and defense counsel argued, that Petitioner fired towards the brush because he "heard" his dogs barking and assumed it was an animal (*see id.* at 246-47, 250, 261, 345-46, 347-48).  Trial counsel also argued that Petitioner justifiably felt threatened while he was in his shed because he "heard" men, that he would later discover were law enforcement officers, talking outside the shed where he was sleeping (*id.* at 352).  Petitioner stated that he "heard them say, 'Did you bring your bolt cutters'" and that led him to believe that there were "a couple of guys breaking in my garage" (*id.* at 256).  As the OCCA pointed out, expert testimony as to Petitioner's hearing loss may have conflicted with his testimony at trial (Doc. 8-3 at 7).

Petitioner has failed to demonstrate that trial counsel's failure to hire an expert was not sound trial strategy.  He has not demonstrated that the OCCA's adjudication of his claim was contrary to, or involved an unreasonable application of, *Strickland*.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim.

### c.      Failure to file motion for new trial

On direct appeal, Petitioner argued that his trial counsel should have filed a Motion for New Trial after learning that a juror, K.B., had posted about the trial on her Facebook page (Doc. 8-1 at 26; *see* Doc. 8-11).  Evidence presented to the OCCA on direct appeal in support of Petitioner's Motion for New Trial shows that on the first day of Petitioner's trial – March 8, 2010 – K.B. posted on Facebook that she "[w]as selected for a criminal case on jury duty today.  I figured my hair style

would exempt me, but alas. . ."  Doc. 8-11 at 13.   Beneath her post, K.B.'s Facebook "friends"

posted comments related to jury duty.  *Id.*  On direct appeal, Petitioner also directed the OCCA's

attention to the transcript of a trial – *State v. Keighton Jon Budder*, Delaware County District Court,

Case No. CF-2009-269 – conducted by Petitioner's trial judge, Judge Robert Haney, after Petitioner

was convicted but before he was sentenced (*id.* at 5, 19).   During that trial, Judge Haney instructed

the jurors that:

> I'm also going to mention this.  If any of you have a Facebook, don't post
> anything on your Facebook about jury, or jury service, or anything else about that
> situation.  And it sounds funny but I just had that arise in my last trial.  So I mention
> it at this point in time.  Don't post anything on the computer.

(*id.* at 20).  On August 30, 2011, the OCCA affirmed the judgement of the trial court and denied

Petitioner's motion for a new trial (*see* Doc. 8-3).   The OCCA stated that there was no proof that

K.B. was influenced by the responses she received as they were the "type of flippant comments

frequently made and easily ignored" (*id.* at 10).   Although the OCCA did not remand the claim for

an evidentiary hearing, the OCCA held that Petitioner could not show that he was prejudiced by

K.B.'s conduct (*id.*).

In a motion to stay filed in this habeas case on March 5, 2015, Petitioner asserts that, in

January 2015, he "received some new evidence from his OIDS attorney who represented him on

appeal" (Doc. 18 at 2).   This evidence consisted of a letter from attorney Katrina Conrad-Legler to

Petitioner and a portion of the transcript from a trial, *State v. Wayne Harley White*, Delaware County

District Court, Case No. CF-2012-182, that took place after Petitioner's trial and sentencing hearing

(*id.* at 9-13).  Judge Haney also presided over the *White* trial.   In the trial transcript, Judge Haney

recounted the story of Petitioner's trial, stating that:

18

> Back several years ago, four or five years ago, I had a young lady sitting up there in that first seat in the back row and she had obviously been to a hair dresser and she had a real spiky hairdo. A young lady. She got selected as a juror. She went home that night and got on her Facebook page and said, well, I got selected as a juror even though I thought my hairdo would get me out of it. That in and of itself was innocuous. That wasn't any big deal. The problem was, is her friends started responding back to her on the Facebook about their experiences of being a juror and what they thought about being a juror, and that therein lies the problem.

(*Id.* at 11-12). Judge Haney then instructed the jurors in the *White* trial to refrain from posting anything on Facebook (*id.* at 12).

Petitioner filed his motion to stay so that he could return to state court and exhaust this new evidence (Doc. 18). The Court denied the motion, finding that stay and abeyance was not appropriate as Petitioner's new evidence was not sufficient to constitute a new claim (Doc. 21). On June 1, 2015, Petitioner filed a subsequent application for post-conviction relief in the state trial court (*see* Doc. 24-1 at 4). The trial court denied the application (*id.*), and the OCCA affirmed the denial on the grounds that "Petitioner's propositions of error either were or could have been raised in his previous application for postconviction relief, and are thus barred or waived. He has not established any sufficient reason for not asserting or inadequately raising his current grounds for relief in his previous application for post-conviction relief" (Doc. 24-2 at 2 (citations omitted)).

### i. Motions to supplement

After the OCCA denied his subsequent application for post-conviction relief, Petitioner filed a "Motion for Leave to Supplement Information" (Doc. 22) and a "Motion to Supplement New Evidence" (Doc. 23). In his "Motion to Supplement New Evidence," Petitioner avers that he has exhausted the new evidence initially presented in his motion to stay (*id.* at 3). In response to Petitioner's motions to supplement, Respondent argues that because "the excerpt from the jury trial

19

in *White* was not and could not have been a part of the state court record presented in Petitioner's direct appeal to the [OCCA]" this Court may not consider it (Doc. 24 at 3-4).

Under *Pinholster*, the Court's "review [of Petitioner's claim] under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181. Although Petitioner avers that the new evidence is exhausted, the limitation imposed by *Pinholster* is not based on the exhaustion requirement. Instead, the limitation is rooted in the idea that when the Court reviews a claim under § 2254(d)(1), the Court is not examining the claim itself but, instead, the Court is examining the OCCA's adjudication of the claim. New evidence – even evidence brought before the OCCA in a subsequent action – is not relevant to the Court's review under § 2254(d)(1) because it does not assist the Court in determining whether the OCCA's initial adjudication of the claim was proper. Therefore, even if Petitioner properly "exhausted" this new evidence, he cannot circumvent the limitation imposed by *Pinholster*.

Petitioner's claim was originally presented to the OCCA on direct appeal. Although Petitioner presented a duplicate claim – including the new supporting evidence – to the OCCA as part of a subsequent post-conviction relief action, the OCCA procedurally barred the claim because Petitioner had previously raised it on direct appeal. If Petitioner's new evidence supported a new claim, the OCCA may not have imposed a procedural bar and this Court's review under § 2254(d) may not have been restricted by *Pinholster*. However, the Court previously determined that Petitioner's new evidence was not sufficient to convert the claim raised on direct appeal into a new claim (*see* Doc. 24). Additionally, in his reply, Petitioner concedes that the claim is not a new claim (Doc. 25 at 2). Because his claim is not a new claim, the Court's review of the OCCA's decision

under § 2254(d)(1) is limited to the record before the OCCA on direct appeal, and the Court may not consider the new evidence as part of its § 2254(d)(1) analysis.[2]

Additionally, if the Court were to determine that – based on the record before the OCCA on direct appeal – the OCCA's adjudication of Petitioner's claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court, the Court might be able to consider the new evidence as part of a *de novo* review of Petitioner's claim. *See Pinholster*, 563 U.S. at 205-06 (Breyer, J., concurring).  Even so, for the reasons stated below, the Court cannot find that the OCCA's adjudication of Petitioner's claim was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court.  Therefore, the Court cannot consider the new evidence as part of its § 2254(d)(1)

---

[2] The Court notes that this "anomalous result" was anticipated in Justice Sotomayor's dissent in *Pinholster*.  *Pinholster*, 563 U.S. at 215-216 (Sotomayor, J., dissenting).  Justice Sotomayor said:

> Under our precedent, if the petitioner had not presented his *Brady* claim to the state court at all, his claim would be deemed defaulted and the petitioner could attempt to show cause and prejudice to overcome the default.  If, however, the new evidence merely bolsters a *Brady* claim that was adjudicated on the merits in state court, it is unclear how the petitioner can obtain federal habeas relief after today's holding.

> . . . .

> The majority's interpretation of § 2254(d)(1) thus suggests the anomalous result that petitioners with new claims based on newly obtained evidence can obtain federal habeas relief if they can show cause and prejudice for their default but petitioners with newly obtained evidence supporting a claim adjudicated on the merits in state court cannot obtain federal habeas relief if they cannot first satisfy § 2254(d)(1) without the new evidence.

*Id.* at 215.

analysis, and the Court will not engage in a *de novo* review of the claim.[3]  Petitioner's motions to

supplement are denied.

### ii. OCCA's adjudication of Petitioner's substantive claim

Petitioner has failed to demonstrate that the OCCA's adjudication of Petitioner's claim was

contrary to, or involved an unreasonable application of *Strickland*.  Although juror K.B. violated the

judge's prohibition on "discuss[ing] this case with anyone else or permit[ting] anyone else to discuss

this case in your presence" (Doc. 26-1, Tr. Vol. I at 79), Petitioner has not shown that he was

prejudiced by this violation.  In his motion for new trial, Petitioner identified three comments as

particularly troublesome:

> **Karen Clampett responded,** "I vote guilty and death penalty! For anything!! Go girl."

> **Susan Weiss Moritz responded,** "Congratulations on being selected. Remember, even if the defendant appears to be innocent of the crime with which he is charged, he probably is guilty of something else, so don't let the facts get in the way of justice. Ha, ha. See? I know how not to get selected!"

> **Jeff Biondi responded,** "wow bubba - you have to let me know how it goes. do they allow death penalty in your state like texas? I will call you this week before my surgery next week in LA xoxo jeffery"

(Doc. 8-11 at 4).  While these flippant comments were received in violation of the judge's

instructions to the jury, they are not sufficient to show prejudice.  The first and second remarks

---

[3] The Court notes that even if review of the claim in light of the new evidence was not prohibited under *Pinholster*, the new evidence would not entitle Petitioner to relief.  Nothing in the *White* transcript suggests that K.B. did not function as a fair and impartial juror as a result of the Facebook post or comments.  This evidence is also cumulative, as the OCCA was already aware from the *Budder* trial transcript, presented to the OCCA as part of Petitioner's direct appeal, that Judge Haney was concerned about jurors posting on social media after learning about K.B.'s conduct in Petitioner's case and that Judge Haney had warned other jurors not to post about the trial on social media.

appear to be sarcasm, and none of the comments discussed the facts of the case.  In this habeas action, Petitioner points to no evidence suggesting that these comments had any impact on K.B. or that K.B. did not act in a fair and impartial manner.[4]

Petitioner has failed to demonstrate that the OCCA's adjudication of Petitioner's claim was contrary to, or involved an unreasonable application of, *Strickland*.  Therefore, Petitioner is not entitled to habeas corpus relief on this claim.

## C.     Certificate of Appealability

Rule 11, *Rules Governing Section 2254 Cases in the United States District Courts*, instructs that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Pursuant to 28 U.S.C. § 2253, the Court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right," and the Court "indicate[s] which specific issue or issues satisfy [that] showing."  A petitioner can satisfy that standard by demonstrating that the issues raised are debatable among jurists, that a court could resolve the issues differently, or that the questions deserve further proceedings.  *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (citation omitted).

After considering the record in this case, the Court concludes that a certificate of appealability should not issue.  Nothing suggests that the Tenth Circuit would find that this Court's application of AEDPA standards to the decision by the OCCA was debatable amongst jurists of

---

[4] In support of his motion for new trial, Petitioner provided a copy of K.B.'s Facebook wall showing that, one day after the jury returned its verdict in Petitioner's trial, K.B. responded to a question on her Facebook wall asking "what was the verdict?" by stating "[i]t was very complicated and VERY sad" (Doc. 8-11 at 13).  Although the OCCA did not remand the issue raised in the motion for new trial for an evidentiary hearing, K.B.'s Facebook response suggests that K.B. took her duties as a juror seriously and that she was not biased against Petitioner.

reason. *See Dockins*, 374 F.3d at 937-38.  The record is devoid of any authority suggesting that the Tenth Circuit Court of Appeals would resolve the issues in this case differently.  A certificate of appealability shall be denied.

### *CONCLUSION*

After careful review of the record, the Court concludes that Petitioner has not established that he is in custody in violation of the Constitution or laws of the United States.  Therefore, the petition for a writ of habeas corpus shall be denied.

**ACCORDINGLY, IT IS HEREBY ORDERED** that,

1. Petitioner's motions to supplement (Doc. 22, 23) are **denied**.

2. The petition for a writ of habeas corpus (Doc. 1) is **denied**.

3. A certificate of appealability is **denied**.

4. A separate judgment shall be entered in this matter.


**DATED** this 12th day of April, 2016.


JOHN E. DOWDELL
UNITED STATES DISTRICT JUDGE

24